# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| ANNE MARIE BARONE,<br>    Plaintiff,<br><br>    v.<br><br>JUDICIAL BRANCH, STATE OF<br>CONNECTICUT,<br>GLORIA ALBERT, and<br>LINDA COON<br>    Defendants. | No. 3:17-cv-00644-VAB |

**RULING ON DEFENDANT'S MOTIONS TO DISMISS AND PLAINTIFF'S MOTION TO AMEND**

Anne Marie Barone ( "Plaintiff") sued her employer, the Judicial Branch for the State of Connecticut ("Judicial Branch") and two Judicial Branch employees who supervised Ms. Barone, Gloria Albert and Linda Coon. Ms. Barone alleges that Defendants discriminated against her in violation of the American with Disabilities Act ("ADA"), and the Rehabilitation Act ("Rehab Act"), and violated her constitutional rights. Currently pending before the Court are Defendants' two motions to dismiss, ECF No. 16 and 25, and Plaintiff's motion to amend the complaint, ECF Nos. 24.

For the reasons stated below, the motion to amend, ECF No. 24, is **GRANTED** and the first motion to dismiss, ECF No. 16, is **DENIED** as moot. Defendants' second motion to dismiss, ECF No. 25, is **GRANTED** in part and **DENIED** in part.

1

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

Ms. Barone, a Connecticut resident, alleges that she worked for Defendant Judicial Branch as a court monitor from April, 2000, until February 22, 2016.[1] *See* Second Amend. Compl. ("Am. Compl.") ¶ 8, ECF No. 24-1. Defendants Albert and Coon both served as Ms. Barone's supervisors while she was employed by Judicial Branch. *Id.* ¶ 13.

A.   **Factual Background**

Ms. Barone alleges that, during the course of her employment, she developed ulcerative colitis and was diagnosed with "Attention-Deficit/Hyperactivity Disorder," a learning disability. *Id.* ¶ 9. She claims that, as a result of these conditions, Defendants perceived Ms. Barone to be disabled, and she sought reasonable accommodations beginning in 2013. *Id.* ¶¶ 9–10. Defendant Albert denied Ms. Barone's request, and Ms. Barone filed a complaint in May 2014 with the Connecticut Commission on Human Rights and Opportunities (CHRO) and the Equal Employment Opportunity Commission (EEOC), challenging the denial.

One month after the filing of the CHRO complaint, Defendant Coon became Ms. Barone's new supervisor. *Id.* ¶ 11. Ms Barone alleges that Defendant Coon "harassed and intimated [sic] the plaintiff to the point of exhaustion, requiring the plaintiff to gout [sic] again on medical leave in 2014." *Id.* Ms. Barone alleges that when she returned, she was again denied a request for an accommodation of her disabilities. *Id.*

Ms. Barone alleges that Defendants Albert and Coon never believed that she was disabled, but instead considered her to be a "malingerer" and "developed animosity and malice toward" her. *Id.* ¶ 13. She claims that, as a result of this malice, they "engaged in an intentional

---

[1] The allegations are drawn from the "Second Amended Complaint," ECF No. 24-1, which, as explained below, will be the operative complaint in this case.

campaign to harass, intimidate and ultimately discharge the plaintiff" from employment. *Id.* Defendants Albert and Coon, Ms. Barone alleges, then proceeded to discipline her for pretextual reasons, including for "using foul language" and "stealing time," even though she claims other employees who behaved in similar ways faced no discipline. *Id.* ¶ 14. They also allegedly gave Ms. Barone negative performance reviews beginning in 2014 and denied her a raise in 2015. *Id.* ¶¶ 14–15.

On January 25, 2016, Ms. Barone allegedly filed a second CHRO complaint against the Judicial Branch, of which she claims both Defendants Albert and Coon were aware. *Id.* ¶ 19. Less than one month later, Defendant Albert notified Ms. Barone that her employment was terminated. *Id.* ¶ 20.

Ms. Barone claims that, as a result of Defendants' actions, she "lost her employment, together with the wages and other tangible benefits of state service; she also suffered emotional stress and fear about her future employment prospects, together with the loss of those statutory and constitutional rights herein described." *Id.* ¶ 21. This lawsuit followed.

**B.     Procedural History**

Ms. Barone filed the initial Complaint in this lawsuit on April 18, 2017. *See* Compl., ECF No. 1. Defendants moved to dismiss the Complaint two months later. *See* Defs. Mot. to Dismiss, ECF No. 16.

On July 24, 2017, Ms. Barone moved for permission to file an Amended Complaint. *See* Pl. Mot. to Amend, ECF No. 24. She argued that "amendment will simplify the litigation and narrow the litigation" in response to the Defendants' first motion to dismiss. *Id.* at 1. The Second Amendment Complaint, which Ms. Barone attached to the motion, would address "most, if not

3

all, of the Defendants' claims . . . by specifying which claims pertain to which Defendants." *Id.* at 2.

The Second Amended Complaint alleges violations of "Title II" of the American with Disabilities Act ("ADA"), 42 U.S.C. § 12131 et. seq., "Section 504" of the Rehabilitation Act, 29 U.S.C. § 794, and violations of 42 U.S.C. §§ 1983 and 1988. The complaint appears to allege violations of the ADA and Rehab Act against Judicial Branch. Additionally, it alleges Defendants Coons and Albert violated the ADA and Rehab Act, and are liable for violating Ms. Barone's First and Fourteenth Amendment rights. The amended complaint states that Defendants Albert and Coon are "sued in [their] individual capacit[ies] only," Am. Compl. ¶¶ 5-6, and, for the purposes of the ADA claims and the Rehabilitation Act claims Defendants are sued in their official capacities. *Id.* ¶¶ 7–8.

Defendants now move to dismiss, in part, the Second Amended Complaint. They state that they do not oppose the motion to amend the complaint. *See* Def. Mot. to Dismiss Second Am. Compl., ECF No. 15; Defs. Mem. in Support, ECF No. 25-1 ("The defendants do not object to this Court granting the amendment request but, as set forth in greater detail below, renew their motion to dismiss in part on grounds similar to those raised previously."). Instead, they move to dismiss Plaintiff's ADA Title II claims against the Judicial Department and any official capacity defendant, arguing that Title I serves as the exclusive ADA remedy. *Id.*

Defendants also move to dismiss the Rehabilitation Act claims against the official capacity defendants, arguing that the Judicial Department was the proper defendant. *Id.* Finally, Defendants move to dismiss claims alleged against Defendants Albert and Coon brought under § 1983 in their individual capacity. Defendants argue that "Plaintiff alleges no facts whatsoever in support of her First Amendment § 1983 claim, thus almost by definition it fails to state a claim

4

and must be dismissed pursuant to F.R.C.P 12(b)(6)." *Id.* at 6. The § 1983 equal protection claims fail, they argue, because disability is not a suspect classification and claims "premised upon substantive rights provided by the ADA" are not "actionable under Section 1983." *Id.* at 7 (quoting *Eskenazi-McGibney v. Connetquot Cent. Sch. Dist.*, 84 F. Supp. 3d 221, 235–36 (E.D.N.Y. 2015)).

On September 27, 2017, Defendants filed a reply noting Ms. Barone's failure to respond to the second motion to dismiss. *See* Def. Rep. at 1, ECF No. 28. Defendants argued that "[t]he unopposed Motion to Dismiss may be granted pursuant to Local Rule 7(a)(1) . . . ." *Id.*

Ms. Barone then moved to file an out of time brief on October 2, 2017. Pl. Mot. for Leave to File, ECF No. 29.[2] She does not contest the motion to dismiss the ADA claims, the claims as to Defendants Albert and Coon under the Rehabilitation Act, and the § 1983 equal protection claims. Pl. Opp. at 1, ECF No. 30.

She does, however, argue that the motion should be denied with respect to her First Amendment claims. *Id.* at 2. She argues that she "pled detailed pattern [sic] of harassment, pretextual discipline and ultimately dismissal, all inspired, at least in part, by the individually named defendants' animus against her for filing a CHRO complaint." *Id.* She also argues she alleged a "pattern and practice of harassment and intimidation." *Id.* Therefore, "[t]hese facts place the defendants on notice that they are facing a claim of retaliating against the plaintiff for seeking relief in a quasi-judicial forum in derogation of her First Amendment right to do so." *Id.* at 3.

The Court held oral argument on February 21, 2018. *See* Minute Entry, ECF No. 35. It also granted Defendants' request for supplemental briefing. Order, ECF No. 34. Defendants filed a supplemental brief on March 6, 2018. *See* Defs. Suppl. Br., ECF No. 36. In it, they argued for

---

[2] The Court granted the motion on October 5, 2017. *See* Order, ECF No. 32.

5

the first time that Ms. Barone had failed to allege speech on a matter of public concern and therefore failed to allege she engaged in speech protected under the First Amendment. *Id.* at 3–6. They also argued, again for the first time, that the individual Defendants were entitled to qualified immunity. *Id.* at 11.

## II. STANDARDS OF REVIEW

### A. Motion to Amend

Rule 15 of the Federal Rules of Civil Procedure provides that parties may either amend once as a matter of course or, once the time period has elapsed, move for leave to file an amended complaint. Fed. R. Civ. P. 15(a). Amendments, as a matter of course, do not require court approval, provided that the amended complaint is filed within 21 days after serving the initial complaint or within 21 days after a responsive pleading or filing of a motion to dismiss. Fed. R. Civ. P. 15(a)(1).

Parties who fail to file an amended complaint within 15(a)(1)'s time period, or who seek additional amendments, may seek the consent of their opposing party or the court's leave to amend. Fed. R. Civ. P. 15(a)(2). The Federal Rules require that the "court should freely give leave when justice so requires." *Id*. Leave to amend may be denied when amendment is "unlikely to be productive," such as when an amendment is "futile" and "could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Lucente v. Int'l Bus. Mach. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (internal citations omitted). Other grounds include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Stiller v. Colangelo*, 221 F.R.D. 316, 317 (D. Conn. 2004) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

**B. Motion to Dismiss**

Federal Rule of Civil Procedure 12(b)(6) requires dismissal of any claim that fails "to state a claim upon which relief can be granted." In reviewing a complaint under Rule 12(b)(6), the court applies "a 'plausibility standard,'" guided by "two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Second, to survive a motion to dismiss, the complaint must state a plausible claim for relief. *Id*. at 679. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. at 678. Instead, a plaintiff must allege facts that "nudge[] their claims across the line from conceivable to plausible . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Determining whether the complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

When evaluating a 12(b)(6) motion, the court must accept all factual allegations in the complaint as true and draw all possible inferences from those allegations in favor of the plaintiff. *See York v. Ass'n of the Bar of the City of New York*, 286 F.3d 122, 125 (2d Cir. 2002), cert. denied, 537 U.S. 1089 (2002). The proper consideration is not whether the plaintiff ultimately will prevail, but whether the plaintiff has stated a claim upon which relief may be granted such that he should be entitled to offer evidence to support his claim. *See id*. (citation omitted). Courts considering motions to dismiss under Rule 12(b)(6) generally "must limit [their] analysis to the four corners of the complaint," though they may also consider documents that are "incorporated

7

in the complaint by reference." *Kermanshah v. Kermanshah*, 580 F. Supp. 2d 247, 258 (S.D.N.Y. 2008).

## III. DISCUSSION

The Court must address three pending motions: two motions to dismiss and a motion to amend the complaint. Because the Court will grant the leave to amend, the Second Amended Complaint is the operative complaint in this case. Defendants have moved to partially dismiss the amended complaint, arguing that the ADA claims must be dismissed as to all defendants, and that the official capacity and individual capacity claims must be dismissed as to Defendants Coon and Albert.

Ms. Barone does not contest dismissal of the majority of these claims, leaving as the only outstanding issue Ms. Barone's claim under § 1983 for violations of her First Amendment rights. The Court finds that she has alleged sufficient facts to sustain the claim; the motion to dismiss therefore is denied with respect to that claim.

### A. Motion to Amend

Following Defendants' first motion to dismiss, ECF No. 16, Ms. Barone moved for permission to amend the Complaint. ECF No. 24. Defendants state that they do not oppose amendment: "The defendants do not object to this Court granting the amendment request but, as set forth in greater detail below, renew their motion to dismiss in part on grounds similar to those raised." Defs. Mem. at 2.

Rule 15 of the Federal Rules of Civil Procedure governs the amendment of pleadings. Rule 15 provides that, following a period where parties may amend as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's

leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* Given Defendants' consent, the motion to amend will be granted.

The case will proceed on the Second Amended Complaint. "It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." *See, e.g., Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir.1994) (internal quotation omitted). Therefore, Defendants' first motion to dismiss, ECF No. 16, is denied as moot. *See Holliday v. Augustine*, No. 3:14-CV-855 SRU, 2015 WL 136545, at *1 (D. Conn. Jan. 9, 2015) (noting "because the plaintiff timely filed his amended complaint, leave to amend is not required. The plaintiff's motion is denied as moot").

### B. ADA, Official Capacity and Equal Protection Claims

Defendants move to dismiss several of the claims in the Second Amended Complaint, arguing:

> (1) plaintiff's ADA Title II claims against Judicial, and any official capacity defendant, must be dismissed because Title I is the exclusive ADA remedy for employment related disability discrimination claims, Judicial is the real party in interest when an official capacity individual is sued, and Judicial enjoys sovereign immunity with respect to Title I ADA claims; (2) plaintiff's Rehab Act claims against the official capacity defendants must be dismissed for failure to state a claim because only the employer entity, Judicial, may be sued thereunder; and (3) plaintiff's § 1983 claims against the individual capacity defendants are not based upon any permissible statutory or constitutional violation, thus they must be dismissed pursuant to F.R.C.P. 12(b)(6). Accordingly, only plaintiff's Rehab Act claim against Judicial can avoid dismissal at this juncture.

Defs. Mem. at 2.

Ms. Barone appears to have conceded several of these points: "The plaintiff opposes the motion to dismiss the First Amendment claims, and does not contest either the motion as to the Americans with Disabilities Act, the motion as to the individually named defendants under the Rehabilitation Act or the motion with respect to the equal protection claims arising under Section 1983." Pl. Opp. at 1.

9

Given Ms. Barone's concession, the Court grants the motion to dismiss with respect to the ADA claims against all Defendants. Additionally, all claims against Defendants Coon and Albert in their official capacity will be dismissed, as well any § 1983 equal protection claims against Defendants Coon and Albert in their individual capacities.

### C. First Amendment Retaliation Claims

The one outstanding issue is whether Ms. Barone's First Amendment claims — that Defendants Albert and Coon retaliated against her for filing a CHRO complaint — fail to state a claim and should be dismissed. Defendants argue that "Plaintiff alleges no facts whatsoever in support of her First Amendment § 1983 claim, thus almost by definition it fails to state a claim and must be dismissed pursuant to F.R.C.P. 12(b)(6)." Defs. Mem. at 6. In their supplemental briefing, Defendants argue that Ms. Barone has not alleged she spoke on a matter of public concern and that Coon and Albert are entitled to qualified immunity.

In response, Ms. Barone claims to have properly alleged a "pattern of harassment, pre-textual discipline and ultimately dismissal, all inspired, at least in part, by the individually named defendants' animus against her for filing a CHRO complaint." Pl. Opp. at 2. She argues that these allegations were sufficient to place Defendants on notice they were facing a First Amendment retaliation claim. At oral argument, Ms. Barone's counsel characterized her CHRO complaint as a petition for redress, and thus entitled to First Amendment protection. The Court agrees.

"It is by now well established that public employees do not check all of their First Amendment rights at the door upon accepting public employment." *Lewis v. Cowen*, 165 F.3d 154, 158 (2d Cir. 1999). The First Amendment protects a plaintiff from retaliation for exercising her rights if "(1) h[er] speech or conduct was protected by the First Amendment; (2) the

defendant took an adverse employment action against h[er]; and (3) there was a causal connection between this adverse action and the protected speech." *Matthews v. City of New York*, 779 F.3d 167, 172 (2d Cir. 2015) (quoting *Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 272 (2d Cir. 2011).

Ms. Barone claims to have suffered an adverse employment action as a result of her filing a CHRO complaint, and Defendants do not appear to contest the second and third prongs of the retaliation claim. Defendants contest whether Ms. Barone has met the first requirement and properly pled she engaged in speech or conduct protected by the First Amendment. Because the Court finds that Ms. Barone has plausibly pled she engaged in speech regarding discrimination, the Court concludes that Ms. Barone has plausibly pled speech on a matter of public concern and therefore her First Amendment retaliation claim survives Defendants' motion to dismiss.

### 1. Protected Speech

In addressing whether or not speech or conduct is protected by the First Amendment, a court must determine if the public employee's speech or action was a matter of public concern. *See, e g.*, *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006); *accord Mathews*, 779 F.3d at 172 (noting two step inquiry to determine if speech is protected, including "whether employee spoke as a citizen on a matter of public concern." (quoting *Garcetti*, 547 U.S. at 418)). The Second Circuit has also noted two considerations when evaluating whether a public employee's action was a matter of public concern: "(1) whether the subject of the employee's speech was a matter of public concern and (2) whether the employee spoke 'as a citizen' rather than solely as an employee." *Matthews*, 779 F.3d at 172 (quoting *Jackler v. Byrne*, 658 F.3d 225, 235 (2d Cir. 2011)). If the answer to either question is "no," the action is not protected. *Id.*

Ms. Barone claims that she filed two CHRO complaints and suffered adverse employment actions a result. Pl. Opp. at 2. She alleges that Defendant Coon "harassed and intimated the plaintiff to the point of exhaustion" after Ms. Barone filed the first CHRO complaint in May of 2014. Am. Compl. ¶¶ 10–11. She also alleges that Defendants Albert and Coon both "regarded the plaintiff's medical leaves as pretextual" and "engaged in an intentional campaign to harass, intimidate and ultimately discharge the plaintiff from state employment." *Id.* ¶ 13. Furthermore, she alleges that she was pretextually disciplined in retaliation for taking medical leave and given poor employments violations. *Id.* ¶¶ 14, 16. She alleges that the both Defendants Coon and Albert were aware of her second CHRO complaint, and that she was fired less than a month afterwards. *Id.* ¶¶ 19, 21.

Each allegation relates primarily to Ms. Barone's employment, and there is little in the Second Amended Complaint suggesting the two complaints she filed with the CHRO addressed general practices at the Judicial Branch, or that the complaints addressed other employees' concerns or working conditions. *Compare Murphy v. Connecticut*, No. 3:11-cv-1228 (CSH), 2012 WL 2458564, at *1–2 (D. Conn. June 27, 2012) (denying leave to amend complaint because, although "Plaintiff makes no other allegations about the contents of the CHRO complaint" the allegations "all concern treatment of Plaintiff herself" and therefore do not implicate a matter of public concern) *with Appel v. Spiridon*, No. 3:07-cv-1237 (SRU), 2011 WL 3651353, at *10 (D. Conn. Aug. 18, 2011) (denying motion to dismiss because "[t]he protected speech at issue in this case is not Appel's complaints about her own work conditions, even though those work conditions may have motivated her to initiate suit, but speech that served a broader public purpose in that it addressed discrimination at the University").

The Second Circuit, however, has "held repeatedly that when a public employee's speech regards the existence of discrimination in the workplace, such speech is a matter of public concern." *Konits v. Valley Stream Cent. High Sch. Dist.*, 394 F.3d 121 (2d Cir. 2005); *see also Mandell v. Cty. of Suffolk*, 316 F.3d 368, 383 (2d Cir. 2003) ("Plaintiff's testimony criticized the department's approach to fighting organized crime, its resistance to change, and its systemic racism and anti-Semitism. All these subjects are clearly matters of public concern.")

And — at the very least — whether or not speech addresses a matter of public concern is a "question of law to be determined by the content form and context of a given statement, as revealed by the whole record." *Connick v. Myers*, 461 U.S. 138, 147–48, (1983).

Ms. Barone has alleged that she filed two CHRO complaints addressing discrimination at the Judicial Branch and by her supervisors. Am. Compl. ¶¶ 10, 19. Such speech about discrimination plausibly relates to a matter of public concern. Neither party has placed the CHRO complaints before the Court at this stage, and the Court will not speculate as to the contents of either complaint. Ultimately, further factual development will be necessary to determine whether Ms. Barone's activity "was calculated to redress personal grievances or whether it had a broader public purpose." *Singer v. Ferro*, 711 F.3d 335, 342 (2d Cir. 2013).

The two primary cases relied on by Defendants, *Huth v. Haslun*, 598 F.3d 70 (2d Cir. 2010); *Lakner v. Lantz*, 547 Fed. App'x 13, 16–17 (2d Cir. 2013), do not suggest otherwise. *See* Suppl. Br. at 6–7.

In *Huth*, the Second Circuit addressed a plaintiff's claims of retaliation for reporting another employee's concerns and initiating the case that was being appealed. *Huth*, 598 F.3d at 73. The court ultimately determined that Ms. Huth had not demonstrated she had suffered a violation of a constitutional right because she had only addressed the other employee's concerns

with supervisors at daily meetings, within her officials duties, and "[t]he record [made] plain that Huth's present lawsuit, asserting claims for monetary and punitive damages, does not qualify as speech on a matter of public concern." *Id.* at 74 (internal quotation marks and citations omitted). But the court in *Huth* only reached this conclusion on appeal from the denial of summary judgment and after a review of a fuller record than currently before this Court. Even then, the court noted that it "rejected a categorical approach that places all speech aimed at redressing personal grievances in the employment context beyond the scope of the First Amendment." *Id.* at 74.

Similarly, the Second Circuit decided *Lakner*, a case on appeal after a grant of summary judgment. 547 Fed. App'x at 15. The plaintiff, a psychiatrist employed to provide care in a Connecticut prison, had filed a previous lawsuit challenging his severance pay after he was fired for bringing alcohol on prison grounds. *Id.* at 17 n.4. The Second Circuit upheld the district court's determination that the lawsuit did not touch matters of public concern, and therefore did not provide a predicate for a First Amendment retaliation claim. *Id.* at 16–17. In other words, the "speech" at issue in *Lakner* did not involve discrimination.

To be clear: further factual development may confirm Defendants' assertion that Ms. Barone was only seeking to remedy her own personal workplace grievance. But that is a question for the summary judgment stage, on a fuller record and after the completion of discovery. At this stage, Ms. Barone's factual allegations are sufficient to survive a motion to dismiss.

### 2. Adverse Employment Action

A plaintiff alleging a First Amendment retaliation claim must also show they suffered an adverse employment action. *Matthews*, 779 F.3d at 172. In the Second Circuit, an adverse action under the First Amendment encompasses "retaliatory conduct that would deter a similarly

situated individual of ordinary firmness from exercising his or her constitutional rights." *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 225 (2d Cir. 2006) (internal quotation marks and citations omitted). The standard is met even by "actions short of discharge or refusal to promote." *Milardo v. Town of Westbrook*, 120 F. Supp. 3d 206, 218 (D. Conn. 2015).

Defendants do not contest whether Ms. Barone has suffered an adverse employment action. Nor can they: Ms. Barone alleged that she was fired as a result of her CHRO complaint. Discharge certainly rises to the level of an adverse action under the First Amendment. *Zelnik*, 464 F.3d at 226 (quoting *Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir. 1999)).

### 3. Causation

Defendants also do not contest whether Ms. Barone has met the causation requirement at this stage. A plaintiff must allege facts that suggest "there was a causal connection between this adverse action and the protected speech." *Matthews*, 779 F.3d at 172. "A plaintiff may establish causation either directly through a showing of retaliatory animus, or indirectly through a showing that the protected activity was followed closely by the adverse action." *Smith v. Cty. of Suffolk*, 776 F.3d 114, 118 (2d Cir. 2015) (citing *Cobb v. Pozzi*, 363 F.3d 89, 108 (2d Cir. 2004)).

Ms. Barone alleges that she filed a second complaint with the CHRO and the EEOC, naming the Judicial Branch as a defendant, and naming the two individual Defendants in this case, on January 26, 2016. Amend Compl. ¶ 19. Defendants fired her on February 22, 2016, less than one month after the filing of second CHRO complaint. *Id.* ¶ 20. Drawing all inferences in her favor, as required at this stage, Ms. Barone has properly alleged causation.

### 4. Qualified Immunity

At oral argument, counsel for Defendants argued that 42 U.S.C. § 1983 should not cover any retaliation following a complaint filed under the Connecticut Fair Employment Practices

15

Act. Counsel requested supplemental briefing to address this point. In their supplemental brief, the individual-capacity Defendants argue that they are entitled to qualified immunity, despite not raising such a defense in their motion to dismiss. They characterize the Plaintiff's First Amendment retaliation claim as "a novel theory of which the individual defendants would not have been aware at the time." Defs. Suppl. Br. at 2.

However novel, the Court need not address — nor is it fair to subject Ms. Barone's lawsuit to — an argument not raised in Defendants' initial motion and briefing or even in its reply brief. The Court will treat this filing as a sur-reply which has been "filed without permission of the Court." D. Conn. L. Civ. R. 7(d). The Court then will exercise its discretion not to require any response from Ms. Barone nor will it give any weight to this argument. *See id.* ("[N]o sur-replies may be filed, without permission of the Court, which may, in its discretion grant permission upon a showing of good cause."); *see also* Victor A. Bolden, Pretrial Preferences, http://www.ctd.uscourts.gov/content/victor-bolden ("Judge Bolden believes that sur-reply briefs are rarely necessary, even in complex cases. He expects that any subsequent briefing will be accompanied by a motion for permission to file.").

In any event, even if Defendants' belated qualified immunity argument was properly before the Court, it would not fare well at this stage of the case. Qualified immunity requires a clearly established right such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001); *see also Huth*, 598 F.3d at 73 ("To overcome the defense of qualified immunity, a plaintiff must show both (1) the violation of a constitutional right and (2) that that constitutional right was clearly established at the time of the alleged violation.") (citing *Pearson v. Callahan*, 555 U.S. 223 (2009)).

Given the well-settled precedent from both the U.S. Supreme Court and the Second Circuit, a "reasonable officer" should be aware he or she could be held liable for retaliating against an employee speaking out against discrimination as a matter of public concern. *See, e.g.*, *Konits*, 394 F.3d at 125 ("Indeed, we have held repeatedly that when a public employee's speech regards the existence of discrimination in the workplace, such speech is a matter of public concern.").[3]

Moreover, whether Defendants are entitled to qualified immunity given the factual particulars of Ms. Barone's case is a question best left for summary judgment. *See, e.g.*, *Walker v. Schult*, 717 F.3d 119, 130 (2d Cir. 2013) ("Rather, as we have noted previously, qualified immunity is often best decided on a motion for summary judgment when the details of the alleged deprivations are more fully developed.").

Ms. Barone has sufficiently alleged having spoken on matters of public concern, having suffered an adverse action as a result, and her speech having caused this adverse action. As a result, Ms. Barone has plausibly alleged a First Amendment retaliation claim. The motion to dismiss is denied.

---

[3] While the Second Circuit granted qualified immunity to the Defendants in *Huth*, it did so because the plaintiff had not suffered a constitutional violation. It did not reach the question of whether the retaliation claim was clearly established. *See Huth*, 598 F.3d at 73. ("We conclude upon a review of the record that Huth cannot show that she suffered a violation of a constitutional right and, therefore, we need not proceed beyond the first prong of this inquiry.").

## IV. CONCLUSION

Plaintiff's motion to amend, ECF No. 24, is **GRANTED**; Defendants' motion to dismiss, ECF No. 16, is **DENIED** as moot. Defendants' motion to dismiss the Second Amended Complaint is **GRANTED** in part and **DENIED** in part**.**

Plaintiff shall filed the amended complaint on the docket within 30 days of this ruling.

SO ORDERED at Bridgeport, Connecticut, this 16th day of March, 2018.

                      /s/ Victor A. Bolden
                      Victor A. Bolden
                      United States District Judge