# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

ANNE MARIE BARONE,
   *Plaintiff,*

   v.

JUDICIAL BRANCH OF THE STATE OF
CONNECTICUT, GLORIA ALBERT, and
LINDA COON,
   *Defendants.*

No. 3:17-cv-644 (VAB)

## RULING AND ORDER ON MOTION FOR SUMMARY JUDGMENT

Anne Marie Barone ("Plaintiff") has sued the Judicial Branch for the State of

Connecticut ("Judicial Branch") and two Judicial Branch supervisors, Gloria Albert and Linda

Coon (collectively "Defendants"), alleging discrimination in violation of the Rehabilitation Act,

and the First Amendment of the U.S. Constitution.

Defendants have moved for summary judgment.

For the following reasons, Defendants' motion for summary judgment is **GRANTED.**

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background[1]

In the year 2000, Ms. Barone started working for the Judicial Branch of the State of

Connecticut as a court monitor, Defs.' Statement of Material Facts ¶ 6, ECF No. 57-2 (Mar. 1,

2019) ("Defs.' SOMF"); Pl.'s Statement of Material Facts ¶ 6, ECF No. 60 (Mar. 15, 2019)

("Pl.'s SOMF"), at the Danbury Superior Court. Defs.' SOMF Ex. A, ECF No. 57-4 at 15

---

[1] As explained in the discussion section below, to the extent that Ms. Barone's Rule 56(a)2 Statement of Material Facts fails to comply with Local Rule 56(a)2 and (a)3 and fails to point to evidence in the record, this Court deems the corresponding facts in the Defendant's Local Rule 56(a)1 Statement to be admitted for purposes of this motion, where those asserted facts are supported by admissible evidence: paragraphs 1, 7, 9, 11-42, 45-98, 100-104, 106-107, and 109-110. The Court will not rely on assertions that are unsupported by admissible evidence in the record.

(Barone Dep. at 49:6-13) ("Barone Dep."). Ms. Albert supervised Ms. Barone until 2014. Defs.'
SOMF ¶ 10; Pl.'s SOMF ¶ 10.

In June 2014, Ms. Coon began to supervise Ms. Barone. Defs.' SOMF ¶ 11; Barone Dep.
at 45:5-8. Ms. Coon worked with Ms. Barone from June 2014 until October of that same year.
Defs.' SOMF ¶ 11-16; Defs.' SOMF Ex. E, ECF No. 57-8 at 5, 12 (Coon Dep. at 16:19-21, 68:5-
10) ("Coon Dep.").

During her employment with the Judicial Branch, Ms. Barone allegedly "developed a
physical disability, ulcerative colitis, and was diagnosed as suffering from a mental and learning
disability, Attention-Deficit/Hyperactivity Disorder" ("ADHD"). Pl.'s SOMF ¶ 20; Defs.' SOMF
¶ 20; Third Am. Compl. ¶ 9, ECF No. 39 (Apr. 3, 2018).

1.      **Requests for leave and accommodation, and the first EEOC Complaint**

In June or July of 2012, Ms. Barone sought medical leave from the Judicial Branch.
Defs.' SOMF ¶ 21. After examining Ms. Barone on June 28, 2012, a physician indicated that she
would be able to return to regular work on July 5, 2012. Barone Dep. Ex. 18, ECF No. 59
(Judicial Branch Medical Certificate (July 5, 2012)) (submitted under seal).

In late 2013 or early 2014, Ms. Barone sought an accommodation from the Judicial
Branch. Defs.' SOMF Ex. C, ECF No. 57-6 at 24 (Albert Dep. at 62:15-25) ("Albert Dep."). Ms.
Barone did not disclose to Ms. Albert what accommodation she had requested or the reason for
the request but told Ms. Albert that "she felt if she filed [the accommodation request, the Judicial
Branch would "have to give her her own office," and that "it would help her do her job better."
*Id.* at 62:21-25, 64:1-65:15).

By early 2014, Ms. Albert had been transferred to the Hartford Superior Court. Defs.'
SOMF Ex. B, ECF No. 57-5 at 2 (Barone Dep. Ex. 1, EEOC Intake Questionnaire (Feb. 25,

2014) (Ms. Barone naming Gloria Albert as her immediate supervisor and noting that she had "just transferred to Hartford") ("EEOC Intake Questionnaire"); Barone Dep. at 49:17-22.

On February 25, 2014, Ms. Barone claimed to have been discriminated against because of her disability of ADHD. EEOC Intake Questionnaire. The questionnaire refers to e-mails describing discriminatory actions, but these underlying e-mails have not been included in this record. *Id.* at 3-4. Ms. Barone claims to have requested her own office on November 15, 2013 and claims to have been "[d]enied an accommodation request" on January 16, 2014, "based on [her] position and not [her] special needs condition." *Id.* at 3-4. The questionnaire quotes an allegedly attached e-mail stating that "[t]he position of a Court Recording Monitor does not require this level of privacy." *Id.* Ms. Barone testified about having worked in a cubicle with walls but stated that she did not have privacy from noise. Barone Dep. at 111:1-112:15.

On March 27, 2014, the EEOC informed Ms. Barone that she needed to complete and return an enclosed Charge of Discrimination form in order for it to take further action. Defs.' SOMF Ex. B, ECF No. 57-5 at 17 (Barone Dep. Ex. 1, EEOC Letter (Mar. 27, 2014)). The EEOC further informed her that the Charge of Discrimination form also would be sent to the Connecticut Commission on Human Rights and Opportunities ("CHRO") to investigate "under their statute" as well. *Id.*

On May 6, 2014, the EEOC received Ms. Barone's completed Charge of Discrimination form. Defs.' SOMF Ex. B, ECF No. 57-5 at 11 (Barone Dep. Ex. 1, EEOC Charge of Discrimination Form (notarized May 2, 2014; EEOC receipt stamp May 6, 2014)). Then, on May 22, 2014, the EEOC confirmed that her charge of employment discrimination had been received and informed her of the procedures going forward. Defs.' SOMF Ex. B, ECF No. 57-5 at 14-15 (Barone Dep. Ex. 1, EEOC Letter (May 22, 2014)). On the same day, an EEOC Mediator sent a

letter addressed to both Ms. Barone and a Human Resources representative of the Judicial

Branch inviting both parties to participate in mediation. Defs.' SOMF Ex. B, ECF No. 57-5 at 13

(Barone Dep. Ex. 1, EEOC Invitation to Mediate (May 22, 2014)).

On June 23, 2014, the EEOC Mediator sent another letter to both Ms. Barone and the

Judicial Branch human resources representative stating that Ms. Barone's charge was "no longer

eligible for mediation through the EOC's Mediation Program" because the "[r]espondent failed

to respond by the due date." Defs.' SOMF Ex. B, ECF No. 57-5 at 12 (Barone Dep. Ex. 1, EEOC

Letter (June 23, 2014)).

Ms. Barone was on approved medical leave for the time periods of August 18 through

September 1, 2014, and September 2 through September 9, 2014. Defs.' SOMF Ex. B, ECF No.

57-5 at 52-53 (Barone Dep. Exs. 20-21, Dr. Jessica Chaudhary Letters recommending medical

leave for Patient Anne Marie Barone (Aug. 18, 2014 and Aug. 27, 2014)). On September 9,

2014, Ms. Barone submitted another form, signed by Dr. Jessica Chaudhary, indicating that due

to "ADHD [and] derivative symptoms," Ms. Barone could "work regular h[ou]rs if she has a

quiet work environment—can focus in court room during trial, but has difficulty [at] duty station

with numerous distractions." Barone Dep. Ex. 24, ECF No. 59-1 (Judicial Branch Medical

Certificate (Sept. 9, 2014)) (submitted under seal).

On September 23, 2014, the Judicial Branch approved leave for Ms. Barone under the

Family Medical Leave Act (FMLA) for September 11 through September 25, 2014. Defs.'

SOMF Ex. B, ECF No. 57-5 at 54-56 (Barone Dep. Ex. 22, Judicial Branch Response to

Employee Request for FMLA Leave (Sept. 23, 2014)). When she returned to work on September

26, 2014, Ms. Barone had to be at her assigned duty station. Barone Dep. at 113:11-13.

Ms. Barone testified that when she requested medical leave time, the Judicial Branch granted her requests. Barone Dep. at 145:8-20.

On January 29, 2015, the EEOC sent a letter to Ms. Barone dismissing her charge of discrimination. Defs.' SOMF Ex. B, ECF No. 57-5 at 6 (Barone Dep. Ex. 1, EEOC Letter (Sept. 23, 2014)). The letter stated, in part, as follows:

> [W]e have examined your charge based upon the information and evidence you submitted. You allege you were subjected to employment discrimination because of disability in violation of the Americans with Disabilities Act of 1990 . . . Respondent's position statement has been previously shared with you. You were provided with an opportunity to submit a rebuttal to this position state [sic] but none was received.
>
> Based upon a review of the documents received, the Commission is unable to conclude that the information establishes a violation of Federal law on the part of Respondent. This does not certify that Respondent is in compliance with the statute.

*Id.*

### 2. Workplace Issues

On July 31, 2014, Ms. Barone received a written reprimand for leaving work on July 3, 2014. Defs.' SOMF Ex. B, ECF No. 57-5 at 24 (Barone Dep. Ex. 5, Judicial Branch Written Reprimand (July 31, 2014)).

On October 17, 2014, Ms. Barone stated "screw you too" to a coworker. Barone Dep. at 91:13-92:10 (testifying that she did say "screw you" to a coworker on the date indicated); Defs.' SOMF Ex. B, ECF No. 57-5 at 28-29 (Barone Dep. Ex. 7, Judicial Branch Disciplinary Letter (Mar. 13, 2015)).

On November 17, 2014, Ms. Barone told a co-worker that "you can't play the invalid card anymore." Barone Dep. at 88:9-15.

The next day, Ms. Barone told her Judicial Branch co-workers that "they can both go fuck themselves." Barone Dep. at 90:3-8; Defs.' SOMF Ex. B, ECF No. 57-5 at 26-27 (Barone Dep. Ex. 6, Judicial Branch Disciplinary Letter (Mar. 9, 2015)).

On November 20, 2014, Ms. Barone sprayed an aerosol substance in the office despite an e-mail having been sent to employees asking them not to spray substances in the office due to another employee's sensitivities. Barone Dep. at 90:12-17; Defs.' SOMF Ex. B, ECF No. 57-5 at 26-27 (Barone Dep. Ex. 6, Judicial Branch Disciplinary Letter (Mar. 9, 2015)).

On March 9, 2015, the Executive Director of Operations for the Judicial Branch suspended Ms. Barone for two days without pay because of the incidents in November of 2014. Defs.' SOMF Ex. B, ECF No. 57-5 at 26-27 (Barone Dep. Ex. 6, Judicial Branch Disciplinary Letter (Mar. 9, 2015)). The corresponding letter states, in part:

> On November 17, 2014 at the end of the work day, you referred to a co-worker as an "invalid." On November 18, 2014, upon arriving at work, you began to argue with this same co-worker. When another employee attempted to diffuse this argument, you told everyone in the office to "go f*** themselves." Also, despite an email to all staff requesting that employees refrain from using perfumes, colognes, or aerosol sprays due to an employee's sensitivity to them, on November 20, 2014 you sprayed a deodorant type spray in the office.
>
> At a predisciplinary meeting you stated that you were frustrated with your co-worker because she used her health issue to "manipulate" getting out of a work assignment. You stated that you do not always express your frustration in the proper way. Regarding the directive not to use perfumes, colognes, or aerosol sprays, you stated that you were out of the office on FMLA and did not receive this email.
>
> Ms. Barone, despite being disciplined [previously] you continue to display a pattern of unacceptable behavior. Your conduct at work continues to be disruptive and unprofessional and creates a hostile work environment. Your actions are in violation of Judicial Branch Policies 101 – Judicial Branch Mission and 614 – Non-Discrimination in the Workplace. . . .

> You are again reminded that you are expected to act in a courteous, respectful manner at all times while at work. Any future violations of a similar nature will result in more serious discipline up to and including termination.

*Id.*

On March 13, 2015, the Executive Director of Operations for the Judicial Branch suspended Ms. Barone again for one day without pay based on the incident in October of 2014. Defs.' SOMF Ex. B, ECF No. 57-5 at 28-29 (Barone Dep. Ex. 7, Judicial Branch Disciplinary Letter (Mar. 13, 2015)). The letter states, in part:

> An investigation was conducted by Human Resource Management and it was substantiated that you again engaged in inappropriate conduct at work. Specifically, on October 17, 2014 while addressing co-workers you said, "screw you too" in an intimidating manner.
>
> At a predisciplinary meeting you stated that you blurt things out and cannot guarantee that you will not do it again. You stated that you only want to do your job, "tried to avoid all of this" and apologized for being this way.
>
> Ms. Barone, Judicial Branch Policy 101 – Judicial Branch Mission, states in part that, "Each Judicial Branch employee should be provided a fair and equitable working environment characterized by amicable understanding, cooperation and harmony." Your actions created a hostile work environment and caused your co-workers to feel uncomfortable and intimidated. This behavior will not be tolerated. . . .
>
> Your actions are in violation of Judicial Branch Policy 101 – Judicial Branch Mission. . . .
>
> . . . Be advised that any future violations of policy will be subject to further disciplinary action, up to and including termination.

*Id.*

On July 21, 2015, Jon Lucas, the Court Planner for the Judicial Branch, notified Ms. Barone of a pre-disciplinary meeting to be held on July 23, 2015, "to determine if just cause exists to impose discipline upon you for violating Judicial Branch policies 501-Absences, 502-

Reporting Attendance, and 518-Unauthorized Leave" as a "result of an unauthorized absence on June 18, 2015." Defs.' SOMF Ex. B, ECF No. 57-5 at 30 (Barone Dep. Ex. 8, Judicial Branch Letter (July 21, 2015)); Barone Dep. at 92:16-93:9.

On August 3, 2015, the Executive Director of Operations for the Judicial Branch sent Ms. Barone another disciplinary letter suspending her for one day without pay based on her absence from work on June 18, 2015. Defs.' SOMF Ex. B, ECF No. 57-5 at 31 (Barone Dep. Ex. 9, Judicial Branch Disciplinary Letter (Aug. 3, 2015)); Barone Dep. at 93:11-94:9. The letter states, in part, as follows:

> On July 31, 2014 you received a Written Reprimand for an unauthorized absence which was the result of failing to follow procedure for requesting time off. On October 24, 2014 you signed a stipulated agreement which stated, *The grievant's next incident of any LU unauthorized time will result in a one (1) day suspension.* One June 18, 2015 you did not report to work at your scheduled start time . . .
>
> At a pre-disciplinary meeting you stated that you were late because you had an emergency with your dog and "texted the girls" to inform them of your situation. Despite texting co-workers, you failed to follow the proper call out procedure and did not inform your designated supervisors of your situation.
>
> Ms. Barone, this absence is in violation of Judicial Branch policies 501 – Absences, and 502 – reporting Attendance. . . . Any future unauthorized leave or other violations of policy will be subject to further disciplinary action, up to and including termination.

Def.'s SOMF Ex. B, ECF No. 57-5 at 31 (Barone Dep. Ex. 9, Judicial Branch Disciplinary Letter (Aug. 3, 2015)) (emphasis in the original).

On October 7, 2015, Mr. Lucas notified Ms. Barone of an investigatory meeting to be held on October 14, 2015, "regarding allegations of theft of time and falsification of Judicial Branch attendance records." Defs.' SOMF Ex. B, ECF No. 57-5 at 36 (Barone Dep. Ex. 11, Judicial Branch Letter (Oct. 7, 2015)); Barone Dep. at 103:19-104:24. The corresponding letter

informed "[Ms. Barone] of [her] right to union representation." Defs.' SOMF Ex. B, ECF No. 57-5 at 36 (Barone Dep. Ex. 11, Judicial Branch Letter (Oct. 7, 2015)).

Ms. Barone sought medical leave again for October 12 through October 23, 2015. Defs.' SOMF Ex. B, ECF No. 57-5 at 57 (Barone Dep. Exs. 23, Dr. Jessica Chaudhary Letter recommending medical leave for Patient Anne Marie Barone (Oct. 19, 2015)).

In October 2015, Ms. Barone wrote a letter to Administrative Judge Shaban stating that she would "be returning to work on October 26, 2015, after being out for the past two weeks," and indicating that she expected to be fired soon after returning. Defs.' SOMF Ex. B, ECF No. 57-5 at 38-46 (Barone Dep. Ex. 13, Barone Letter to Judge Shaban); Barone Dep. at 105:21-106:25 (Ms. Barone answering "yes" to the question, "Would it be fair to say that this letter was written in or around October of 2015?"). The letter states, in part:

> I'm sure it comes as no surprise, to you, that I am ADHD, but this has been both a gift and a curse, for me. And what has transpired, in the last couple of years, has become the latter.
> I owned what I was responsible for. I always will. But I now realize where this is going…my termination.
> The following is a synopsis of what has transpired on my end.

Defs.' SOMF Ex. B, ECF No. 57-5 at 38-39 (Barone Dep. Ex. 13, Barone Letter to Judge Shaban). The letter describes, from Ms. Barone's perspective in October 2015, what had occurred since June 2013 relating to Ms. Barone's disability, requests for medical leave, EEOC complaint, and disciplinary actions against her. *Id.* at 39-46.

On October 26, 2015, Mr. Lucas notified Ms. Barone of another investigatory meeting to be held on October 28, 2015, "regarding allegations of theft of time and falsification of Judicial Branch attendance records." Defs.' SOMF Ex. B, ECF No. 57-5 at 37 (Barone Dep. Ex. 12, Judicial Branch Letter (Oct. 26, 2015)); Barone Dep. at 105:1-17. The letter again informed

"[Ms. Barone] of [her] right to union representation." Defs.' SOMF Ex. B, ECF No. 57-5 at 37 (Barone Dep. Ex. 12, Judicial Branch Letter (Oct. 26, 2015)).

On October 29, 2015, Mr. Lucas reported on the results of an investigation into allegations of "Theft of Time" and "Falsifying Judicial Branch Attendance Records" against Ms. Barone. Defs.' SOMF Ex. B, ECF No. 57-5 at 32-35 (Barone Dep. Ex. 10, Report of Investigation (Oct. 27, 2015)); Barone Dep. at 95:1-21 (Ms. Barone confirming that she received the report).

Based on a review of Ms. Barone's time sheets and card access reports for the period of May 1 through October 1, 2015, communications with Ms. Albert, and the October 28, 2015 interview with Ms. Barone (at which the letter states Ms. Barone's union representative was present), the report concluded that Ms. "Barone falsified Judicial Branch attendance documents, stole time, and engaged in excessive tardiness without charging time." Defs.' SOMF Ex. B, ECF No. 57-5 at 32-35 (Barone Dep. Ex. 10, Report of Investigation (Oct. 27, 2015)). "As such Barone violated Judicial Branch Policy 501 – Absences, and 502 – Reporting Attendance." *Id.* at 35. Specifically, the report determined that Ms. Barone "regularly misrepresented the hours she worked on her time sheets;" "falsely recorded her arrival times on her time sheet on a regular basis;" inaccurately claimed that she was allowed to use flex time on a regular basis; lacked evidence that she worked beyond her scheduled work time on days when she had sought overtime; lacked credible explanations for why the card access report indicated that she arrived late on a regular basis; and "failed to account for 18.75 hours of time during this period." *Id.* at 34-35.

On November 12, 2015, Mr. Lucas notified Ms. Barone of a pre-disciplinary meeting to be held on November 19, 2015, "to determine if just cause exists to impose discipline upon you

for violating Judicial Branch Policy 501 – Absences, and 501 – Reporting Attendance." Defs.'
SOMF Ex. B, ECF No. 57-5 at 47 (Barone Dep. Ex. 14, Judicial Branch Letter (Nov. 12, 2015));
Barone Dep. at 115:11-20. The corresponding letter stated that "[t]hese violations stem from an
investigation that substantiated that you arrive late to work on a regular basis and do not charge
time; and you falsely recorded your time on Judicial Branch attendance records" and also
references "an unauthorized absence on October 28, 2015." Defs.' SOMF Ex. B, ECF No. 57-5
at 47 (Barone Dep. Ex. 14, Judicial Branch Letter (Nov. 12, 2015)). The letter also "notified [Ms.
Barone] of [her] right to union representation." *Id.*

On December 8, 2015, an Administrative Assistant for Human Resources for the Judicial
Branch sent Ms. Barone a letter denying a request for FMLA leave because Ms. Barone had not
returned a "request for leave form" or medical certificate that had been sent to her on October 9,
2015, which were required for FMLA leave requests. Defs.' SOMF Ex. B, ECF No. 57-5 at 59
(Barone Dep. Ex. 25, Judicial Branch HR Letter (Dec. 8, 2015)).

On December 9, 2015, Mr. Lucas notified Ms. Barone of a pre-disciplinary meeting on
December 11, 2015, "to determine if just cause exists to impose discipline upon you for violating
Judicial Branch policies 501-Absences, 502-Reporting Attendance, 513-Leaves of Absence
Without Pay, and 518-Unauthorized Leave." Defs.' SOMF Ex. B, ECF No. 57-5 at 48 (Barone
Dep. Ex. 15, Judicial Branch Letter (Dec. 9, 2015)); Barone Dep. at 116:21-117:5. The letter
states that the "violations are a result of unauthorized absences on October 20, 21, 22, 23, 2015
and November 24, 2015. Each occurrence of unauthorized leave will be considered
independently and handled separately in the disciplinary process." Defs.' SOMF Ex. B, ECF No.
57-5 at 48 (Barone Dep. Ex. 15, Judicial Branch Letter (Dec. 9, 2015)). The letter also "notified
[Ms. Barone] of [her] right to union representation." *Id.*

On January 26, 2016, Ms. Barone filed a complaint with the CHRO, claiming discrimination by the Judicial Branch based on her disability and on her prior complaints about discriminatory conduct in violation of federal and state law. Defs.' SOMF Ex. D, ECF No. 57-7 (Albert Dep. Ex. D, Affidavit of Illegal Discriminatory Practice, Conn. Comm'n on Human Rights and Opportunities (notarized Jan. 26, 2016)). Specifically, Ms. Barone claimed that she was "docketed pay beginning in the Fall of 2015," "given a poor evaluation [in] April 2015," "denied a raise [in] April 2015," "retaliated against after EEOC filing," and "denied reasonable accommodations from November 2013 through present." *Id.*

On February 22, 2016, the Executive Director for Court Operations at the Judicial Branch notified Ms. Barone of the imposition of discipline for violations of Judicial Branch Policies 501 – Absences, 502 – Reporting Attendance, 513 – Leaves of Absence Without Pay, and 518 – Unauthorized Leave, stemming from unauthorized leave on October 20, 21, 22, 23, 28, and November 24, 2015. Defs.' SOMF Ex. B, ECF No. 57-5 at 49 (Barone Dep. Ex. 16, Judicial Branch Letter (Feb. 22, 2016)); Barone Dep. at 117:17-118:7. The Judicial Branch also terminated Ms. Barone's employment that same day. *Id.*

The next day, February 23, 2016, Ms. Barone filed a Notice of Charge of Discrimination against the Judicial Branch with both the EEOC and the CHRO. Defs.' SOMF Ex. B, ECF No. 57-5 at 7 (Barone Dep. Ex. 1, EEOC Notice of Charge of Discrimination (Feb. 23, 2016)). Ms. Barone originally claimed disability discrimination and retaliation under the Americans with Disabilities Act (ADA) and Title VII of the Civil Rights Act. *Id.*

### B. Procedural History

On April 18, 2017, Ms. Barone filed this lawsuit against the Judicial Branch, Ms. Albert, and Ms. Coon. Compl., ECF No. 1 (Apr. 18, 2017).

Over the course of the next several months, the parties filed various motions to amend the Complaint, to dismiss Amended Complaints, and for extensions of time to respond to each other's motions. *See* ECF Nos. 2-36.

On February 21, 2018, the Court held a hearing on several of these motions. Minute Entry, ECF No. 35 (Feb. 21, 2018).

On March 16, 2018, the Court granted in part and denied in part the Defendants' motion to dismiss the Second Amended Complaint. Order, ECF No. 37 (Mar. 16, 2018). The Court also granted the Plaintiff's most recent motion to amend/correct the Second Amended Complaint. *Id.*

On April 3, 2018, Plaintiff filed a Third Amended Complaint bringing claims only under the Rehabilitation Act and the First and Fourteenth Amendments. Third Am. Compl., ECF No. 39 (Apr. 3, 2018).[2] She seeks damages against the Judicial Branch and against Ms. Albert and Ms. Coon in their individual capacities and "[s]uch other relief as this Court deems fair and equitable." *Id.* The Third Amended Complaint forms the basis for this motion for summary judgment.

On May 8, 2018, Defendants filed an Answer and Affirmative Defenses to the Third Amended Complaint. Answer, ECF No. 42 (May 8, 2018).

On March 1, 2019, Defendants filed a motion for summary judgment. Defs.' Mot. Summ. J., ECF No. 57 (Mar. 1, 2019). In support of their motion, Defendants filed a memorandum of law, a statement of material facts, and six exhibits which consisted of depositions of Ms. Barone, Ms. Albert, and Ms. Coon. Defs.' Mem. Summ. J., ECF No. 57-1 (Mar. 1, 2019) ("Defs.'

---

[2] The Plaintiff filed two identical Amended Complaints on April 3, 2018, docketed as ECF No. 38 and ECF No. 39. The Court cites to the Complaint docketed at ECF No. 39 because the Defendants' motion to dismiss cites to that document, but since the two documents are identical, this Ruling and Order is addressed to both.

Mem."); Defs.' SOMF, ECF No. 57-2 (Mar. 1, 2019); Defs.' Mot. Summ. J. Ex. Index, ECF No. 57-3 (Mar. 1, 2019).

On March 15, 2019, Plaintiff opposed the motion for summary judgment. Pl.'s Opp., ECF No. 60 (Mar. 15, 2019). In support of her opposition, Plaintiff submitted a memorandum of law, a statement of material facts, and several evidentiary documents within the same file, including medical records, affidavits from Ms. Barone, and journal entries from Ms. Barone. *Id.*

On March 22, 2019, Defendants filed their reply. Defs.' Reply, ECF No. 61 (Mar. 22, 2019).

On July 24, 2019, Defendants filed a notice of controlling authority in support of motion for summary judgment. Notice of Contr. Auth., ECF No. 67 (July 24, 2019) ("Defs.' First Notice Contr. Auth."). Plaintiff objected to the Defendants' claim of controlling authority on July 27, 2019. Reply to Response to Mot. for Summ. J., ECF No. 68 (July 27, 2019) ("Pl.'s Obj. to First Notice Contr. Auth.").

On August 13, 2019, Defendants submitted another notice of controlling authority in support of motion for summary judgment. Notice of Contr. Auth., ECF No. 69 (Aug. 13, 2019) ("Defs.' Second Notice Contr. Auth.").

On August 27, 2019, Defendants submitted a notice of supplemental authority in support of motion for summary judgment. Notice of Supp. Auth., ECF No. 70 (Aug. 27, 2019) ("Defs.' Notice Supp. Auth.").

On November 25, 2019, the Court held a hearing on Defendant's motion for summary judgment. Minute Entry, ECF No. 79 (Nov. 25, 2019).

## II.    STANDARD OF REVIEW

A motion for summary judgment will be granted if the record shows no genuine issue as to any material fact, and the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986). The non-moving party may defeat the motion by producing sufficient specific facts to establish that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48. The moving party may satisfy this burden by pointing out to the district court an absence of evidence to support the nonmoving party's case. *See PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam).

"[T]he substantive law will identify which facts are material." *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*; *see Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) ("[M]ateriality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law.") (citing *Anderson*, 477 U.S. at 248).

"The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250. When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the nonmoving party must do more than vaguely assert the existence of some unspecified disputed

material facts or "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted).

When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the nonmoving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." *Id.* (citation omitted). The party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.*; *see also Atkinson v. Rinaldi*, 3:15-cv-913 (DJS), 2016 WL 7234087, at *1 (D. Conn. Dec. 14, 2016) (holding nonmoving party must present evidence that would allow reasonable jury to find in his favor to defeat motion for summary judgment); *Pelletier v. Armstrong*, 3:99-cv-1559 (HBF), 2007 WL 685181, at *7 (D. Conn. Mar. 2, 2007) ("[A] nonmoving party must present 'significant probative evidence to create genuine issue of material fact.'") (quoting *Soto v. Meachum*, 3:90-cv-270 (WWE), 1991 WL 218481, at *6 (D. Conn. Aug. 28, 1991)).

Any inferences drawn from the facts must be done in the light most favorable to the party opposing the summary judgment motion. *Dufort v. City of N.Y.*, 874 F.3d 338, 343 (2d Cir. 2017). A court will not draw an inference of a genuine dispute of material fact from conclusory allegations or denials. *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). After drawing all inferences in favor of the non-moving party, if a court finds that no reasonable trier of fact could find in the non-movant's favor and the moving party is entitled to judgment as a matter of law, a court will grant the summary judgment motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

## III. DISCUSSION

### A. The Rehabilitation Act Claim Against the Judicial Branch

Section 504 of the Rehabilitation Act provides that:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .

29 U.S.C. § 794(a). Courts evaluate employment discrimination claims under the Rehabilitation Act by applying the same standards applied to employment discrimination claims under the Americans with Disabilities Act of 1990. *Natofsky v. City of New York,* 921 F.3d 337, 345 (2d Cir. 2019), *petition for cert. filed*, No. 19-372 (Dec. 10, 2019) ("The standards used to determine whether [Section 504 of the Rehabilitation Act] has been violated in a complaint alleging employment discrimination . . . shall be the standards applied under title I of the Americans with Disabilities Act of 1990." (quoting 29 U.S.C. § 794(d)).

Claims alleging disability discrimination in violation of the Rehabilitation Act are subject to the burden-shifting analysis originally established by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, (1973). *Petrone v. Hampton Bays Union Free Sch. Dist.*, 568 F. App'x 5, 7 (2d Cir. 2014) ("The elements of a discrimination claim under the ADA and section 504 of the Rehabilitation Act are identical and are analyzed under the same burden-shifting framework.") (citing *Lyons v. Legal Aid Soc'y*, 68 F.3d 1512, 1515 (2d Cir. 1995)); *McBride v. BIC Consumer Prods. Mfg. Co., Inc.*, 583 F.3d 92, 96 (2d Cir. 2009) (applying the *McDonnell Douglas* analysis to an ADA employment discrimination claim).

Under this burden-shifting framework, the "plaintiff must establish a prima facie case [of discrimination]; the employer must offer through the introduction of admissible evidence a

legitimate nondiscriminatory reason for the [adverse action]; and the plaintiff must then produce evidence and carry the burden of persuasion that the proffered reason is a pretext." *Sista v. CDC Ixix N.A., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006) (citing *Heyman v. Queens Vill. Comm. for Mental Health for Jamaica Cmty. Adolescent Prog.*, 198 F.3d 68, 72 (2d Cir.1999)).

Ms. Barone claims that the Judicial Branch discriminated against her based on her disability in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. Third Am. Compl. ¶ 1-2.

Defendants argue that Ms. Barone has failed to make a prima facie case of discrimination under the Rehabilitation Act because she has not established that she faced adverse employment actions due to a disability within the meaning of the ADA and because she was not otherwise qualified for her position. Defs.' Mem. at 6.

Even if Ms. Barone could establish a prima facie case, Defendants argue that her Rehabilitation Act must fail under the *McDonnell Douglas* burden-shifting framework because Ms. Barone has failed to meet her burden of persuasion to show that the Defendants' proffered legitimate nondiscriminatory reasons for actions taken against Ms. Barone were pretext. *Id.* at 14-16.

The Court addresses each of these issues in turn.

**1. The Alleged Prima Facie Case of Discrimination**

To establish a prima facie case of disability discrimination under the Rehabilitation Act, a plaintiff must show:

> (1) that the plaintiff is handicapped within the meaning of the Act;
> (2) that the plaintiff is otherwise qualified to perform the job; (3)
> that the plaintiff was discharged because of his or her handicap; and
> (4) that the employer is a recipient of federal financial assistance.

*Kinsella v. Rumsfeld*, 320 F.3d 309, 314 (2d Cir. 2003). Additionally, "[t]he standards used to determine whether [Section 504 of the Rehabilitation Act] has been violated in a complaint alleging employment discrimination . . . shall be the standards applied under Title I of the Americans with Disabilities Act of 1990." *Natofsky,* 921 F.3d at 345 (quoting the Rehabilitation Act, 29 U.S.C. § 794(d)); *see also Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015) (setting forth elements of a prima facie case under the ADA: "(1) the employer is subject to the ADA; (2) the plaintiff is disabled within the meaning of the ADA or perceived to be so by her employer; (3) she was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; (4) she suffered an adverse employment action; and (5) the adverse action was imposed because of her disability" (internal alterations omitted)).

Defendants concede that Ms. Barone is subject to the Rehabilitation Act and that Ms. Barone suffered adverse employment actions "with progressive discipline resulting in suspensions and eventual termination." Defs.' Mem. at 6. Defendants argue, however, that (a) Ms. Barone cannot establish that she was disabled within the meaning of the Rehabilitation Act; (b) the adverse actions Ms. Barone suffered were not imposed because of a disability; and (c) the Rehabilitation Act only protects individuals who are otherwise qualified for their job, and Ms. Barone was unqualified for her position of court monitor because she had committed various acts of misconduct, including threatening other employees. *Id.*

As discussed further below, the evidence in this record fails to provide a genuine issue of material fact as to Ms. Barone's prima facie case. The Court also determines that, even if she had established a prima facie case, she cannot meet her burden of creating a genuine issue of material fact on her Rehabilitation Act claim sufficient to prevent its dismissal.

District courts have "considerable latitude in fashioning rules that will assist them in determining whether summary judgment is appropriate." *Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 471 (2d Cir. 2002). "Because nothing in the federal rules mandates that district courts conduct an exhaustive search of the entire record before ruling on a motion for summary judgment, district courts are entitled to order litigants to provide specific record citations." *Id.* at 470–71 (citing Fed. R. Civ. P. 83(b) (allowing district courts to regulate motion practice in any manner consistent with federal law and the federal rules)).

The District of Connecticut's Local Rule 56(a) requires that a non-moving party's Statement of Material Facts in Opposition to Summary Judgment "shall include . . . a response to each paragraph admitting or denying the fact and/or objecting to the fact as permitted by Federal Rule of Civil Procedure 56(c)."[3] D. Conn. L. Civ. R. 56(a)2(i). Furthermore, "[e]ach denial . . . must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial, or (2) other evidence that would be admissible at trial." *Id.* 56(a)3.

The "specific citation" obligation of this Local Rule requires parties to cite to specific paragraphs when citing to affidavits or responses to discovery requests and to cite to specific pages when citing to depositions or other transcripts or to documents longer than a single page in length. *Id.* "When a party fails to appropriately deny material facts set forth in the movant's Rule 56(a)(1) statement, those facts are deemed admitted." *SEC v. Global Telecom Servs. L.L.C.,* 325 F. Supp. 2d 94, 109 (D. Conn. 2004); D. Conn. L. Civ. R. 56(a)3 (providing that if a non-moving party fails to provide specific citations to evidence in the record, the Court may "deem[] admitted certain facts [in the movant's Statement of Material Facts] that are supported by the evidence in accordance with Local Rule 56(a)1").

---

[3] *See* Fed. R. Civ. P. 56(c) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.")

In her Local Rule 56(a)2 Statement of Material Facts, Ms. Barone responds to many paragraphs from the Defendants' 56(a)1 Statement by claiming that she "is not in a position to admit or deny the paragraph, as stated." *See* Pl.'s SOMF ¶¶ 1, 7, 9, 11-19, 21-29, 38, 46-49, 56, 58-60, 62-74, 76, 85-88, 102-103. These responses fail to meet the requirements of Rule 56(a)2 to "respond to each paragraph admitting or denying the fact and/or objecting to the fact" as based on inadmissible evidence, because they neither agree with or deny the statements made by the moving party.

As a result, paragraphs 1, 7, 9, 11-19, 21-29, 38, 46-49, 56, 58-60, 62-74, 76, 85-88, and 102-103 of the Defendants' Local Rule 56(a)1 statement are deemed admitted. *See Buell v. Hughes*, 568 F. Supp. 2d 235, 237 (D. Conn. 2008) (finding that a plaintiff's responses did not comply with Local Rule 56(a)2 where they stated that "Plaintiffs lack sufficient information to agree or disagree," and accordingly deeming those paragraphs admitted); *Henton v. City of New London*, 3:06-cv-2035 (EBB), 2008 WL 2185933 at *4 (D. Conn. May 23, 2008) (same); *Knight v. Hartford Police Dep't*, No. 3:04-cv-969 (PCD), 2006 WL 1438649, at *4 (D. Conn. May 22, 2006) (deeming admitted defendant's undisputed facts where plaintiff responded that he "ha[d] no knowledge" of or "disagree[d] with" the statements and where he offered no evidence in dispute); *Walton v. State of Conn., Dep't of Soc. Servs.*, No. 3:03-cv-2262 (JBA), 2006 WL 533793 (D. Conn. Mar. 2, 2006) (deeming admitted defendant's material facts where plaintiff claimed insufficient knowledge to respond and offered no evidence to dispute facts).

Ms. Barone responds to many other paragraphs in Defendants' 56(a)1 Statement by denying them "as stated," *id.* ¶¶ 20, 34, 42, 51-53, 55, 61, 75, 77-84, 90-96, 98, 106, or by admitting "only that this is [the litigant's] testimony at deposition," but not admitting or denying the fact asserted in the statement. *See id.* ¶¶ 16-17, 30, 33, 35-37, 45, 50, 54, 57, 89, 95, 97, 101,

104, 107, 109-110. These responses also fail to comply with Local Rule 56(a)2 because they do not respond to the fact itself. As a result, paragraphs 16-17, 20, 30, 33-37, 42, 45, 50-55, 57, 61, 75, 77-84, 89, 90-98, 101, 104, 106-107, and 109-110 are also deemed admitted. *See Buell*, 568 F. Supp. 2d at 238 (deeming paragraphs admitted where non-movants "objected to the phrasing of the statement, and stated so in their response rather than stating whether they agreed or disagreed with the statement put forth," and where non-movants "objected to the formatting and the inclusion of the statement, rather than answering the fact as required by Local Rule 56(a)2").

Where Ms. Barone denies paragraphs from Defendants' 56(a)1 Statement, she fails to provide a specific citation to admissible evidence in the record. *Id.* ¶ 20, 31-32, 34, 42, 51-53, 55, 61, 75, 77-84, 90-96, 98, 100, 106. These statements do not comply with the Local Rule's "specific citation" requirement. D. Conn. L. Civ. P. 56(a)3. The Court has already deemed admitted all paragraphs which Ms. Barone denied "as stated." The Court may deem as admitted any other paragraph that is not properly denied with a specific citation to admissible evidence. *Reynolds v. Town of Suffield*, No. 3:10-cv-1528 (JBA), 2012 WL 3135896, at *1 (D. Conn. July 31, 2012) (deeming admitted, under Local Rule 56(a)3, all facts which plaintiffs failed to deny with proper specific citations to admissible evidence in the record); *see also Amnesty*, 288 F. 3d at 471 ("[D]istrict courts are entitled to order litigants to provide specific record citations."). Accordingly, the Court also deems admitted paragraphs which Ms. Barone disputes without providing citations to the record to support her denials: paragraphs 31-32 and 100.

Ms. Barone responds to a few paragraphs by "admit[ting] only that" the accommodation was "suggested" or "explored." *Id.* ¶ 39-41. She also asserts without any reference to admissible evidence—let alone a specific citation—that she informed the Defendants that the explored accommodations were insufficient for her. *Id.* These responses are insufficient under Local Rule

22

56(a) both because they fail to admit or deny the fact asserts, *see Buell*, 568 F. Supp. 2d at 238; and because they fail to deny facts with a specific citation to admissible evidence, *see Reynolds*, 2012 WL 3135896, at *1. Accordingly, the Court also deems admitted paragraphs 39-41.

Indeed, Ms. Barone does not provide a single citation throughout her 56(a)2 statement. Pl.'s SOMF. Instead, she makes conclusory assertions, references materials that are not presented in the record, and repeatedly asserts that "the defendant employer has records available to confirm" particular paragraphs "which should be produced." *See* Pl.'s SOMF ¶¶ 7, 9, 11-19, 21-28, 30-38, 42, 46-60, 62-72, 74, 76-77, 88, 96, 101-103. Additionally, Ms. Barone does not include a separately titled section of "Additional Material Facts" which could "establish genuine issues of material fact precluding judgment in favor of the moving party" as required by Local Rule 56(a)2(ii).[4] Instead, she sets out a section titled "Rule 56(a)(2) Statement of Material Facts in Dispute," which consists of seven conclusory statements and not a single citation to evidence in the record. Pl.'s SOMF, ECF No. 60 at 20.

At this stage, Ms. Barone must provide more than "conclusory allegations or unsubstantiated speculation." *Robinson*, 781 F.3d at 44 (citation omitted). She "must present concrete evidence from which a reasonable juror could return a verdict in [her] favor." *Alteri v. Gen. Motors Corp.*, 919 F. Supp. 92, 94-95 (N.D.N.Y 1996), *aff'd*, 116 F.3d 465 (2d Cir. 1997) (internal quotations omitted); *see also Celotex Corp.*, 477 U.S. at 324 (holding that Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts

---

[4] Local Rule 56(a)2(ii) requires that a non-moving party "must also include a separate section entitled 'Additional Material Facts' setting forth in separately numbered paragraphs meeting the requirements of Local Rule 56(a)3 any additional facts, not previously set forth in responding to the movant's Local Rule 56(a)1 Statement, that the party opposing summary judgment contends establish genuine issues of material fact precluding judgment in favor of the moving party."

showing that there is a genuine issue for trial.'"). "Where a statement is not supported by the record, the Court either notes such or does not rely on the purported fact in its determination." *Johnson v. Conn. Dep't of Admin. Servs.*, 972 F. Supp. 2d 223, 229 (D. Conn. 2013), *aff'd*, 588 F. App'x 71 (2d Cir. 2015). Additionally, a District Court is not obligated to "perform an independent review of the record to find proof of a factual dispute. A district court is obligated only to consider the materials cited to it by the parties." *Morales v. N.Y. State Dep't of Labor*, 530 Fed. App'x. 13, 14 (2d Cir. 2013) (internal quotation marks and citation omitted).

As a result, to the extent that Ms. Barone's Rule 56(a)2 Statement of Material Facts fails to comply with Local Rule 56(a)2 and (a)3 and fails to point to concrete evidence in the record, the corresponding facts in the Defendant's Local Rule 56(a)1 Statement shall be deemed admitted for purposes of this motion, where those asserted facts are supported by admissible evidence: paragraphs 1, 7, 9, 11-42, 45-98, 100, 101-104, 106-107, and 109-110. The Court will not rely on any assertions that are unsupported by admissible evidence in the record.

More specifically, without any elaboration or citations to the record, Ms. Barone argues that "[t]here is credible evidence in the record from multiple sources that the [P]laintiff suffered from ulcerative colitis, Attention Deficit Disorder and depression," Pl.'s Mem. at 5, three distinct medical conditions. But beyond conclusory assertions, Ms. Barone does not provide record evidence that ulcerative colitis substantially limited major life activities or provide any basis from which a jury could conclude that the Defendants discriminated against her based on this medical condition.

Her reference to depression is even more problematic. "It is well established that a party cannot assert a claim for the first time in its motion papers." *Mignault v. Ledyard Pub. Sch.*, 792 F. Supp. 2d 289, 301 (D. Conn. 2011) (quoting *Global Crossing Bandwidth, Inc. v. Locus*

*Telecommunication, Inc.*, 632 F. Supp. 2d 224, 245 (W.D.N.Y. 2009)); *see also Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment."); *Allah v. Poole*, 506 F. Supp. 2d 174, 193 (W.D.N.Y. 2007) ("a memorandum of law or other motion papers are not proper vehicles by which to raise claims that are not asserted in the complaint"). But Ms. Barone for the first time in her opposition to summary judgment refers to a medical diagnosis of depression. Pl.'s Mem. at 5. In any event, there is no record evidence that Ms. Barone faced adverse actions at work because of her alleged depression.

As to Ms. Barone's claims of discrimination based on ADHD, "a plaintiff diagnosed with ADHD may have a mental impairment within the meaning of the [Americans with Disabilities Act,[5] [b]ut that impairment must also limit a major life activity to a substantial degree." *Robinson v. Our Lady of Lourdes Mem'l Hosp., Inc.*, No. 3:14-cv-0308 (MAD/DEP), 2014 WL 5149221, at *7 (N.D.N.Y. Oct. 14, 2014) (quoting *Bercovitch v. Baldwin Sch., Inc.,* 133 F.3d 141, 155 (1st Cir. 1998)). In considering whether a major life activity is substantially limited by an impairment, courts consider "the nature and severity of the impairment; its duration or expected duration; and the existence of any actual or expected permanent or long term impact." *Mazzeo v. Mnuchin*, 751 F. App'x 13, 15 (2d Cir. 2018) (quoting *Capobianco v. City of New York*, 422 F.3d 47, 57 (2d Cir. 2005). A plaintiff must show that her impairments do not simply cause some difficulty with a major life activity, but that they substantially limit that activity. *See Price v. Mount Sinai Hosp.*, 458 F. App'x 49, 51 (2d Cir.

---

[5] While Ms. Barone does not bring claims under the Americans with Disabilities Act, the Rehabilitation Act "defines 'disability' in virtually the same terms as" the ADA. *Rivera v. Heyman*, 157 F.3d 101, 103 (2d Cir. 1998); *see also Beason v. United Techs. Corp.*, 337 F.3d 271, 277 (2d Cir. 2003) ("[The ADA] definition of disability borrows heavily from a definition contained in the Rehabilitation Act, which" defines a person with a disability "as a person who has 'a physical or mental impairment which substantially limits one or more of such person's major life activities.'" (internal citations omitted)).

2012) (affirming a district court's finding that, while the plaintiff's symptoms of work-related stress and depression caused her some difficulty sleeping and eating, "no evidence showed that [her] impairments were *substantially* limiting" (emphasis in the original)).

Ms. Barone argues that she had requested her own private office because her ADHD "at times affects [her] job performance because [she is] unable to focus," EEOC Intake Questionnaire; and a physician opined that, due to "ADHD [and] derivative symptoms," Ms. Barone could "work regular h[ou]rs if she has a quiet work environment – can focus in court room during trial, but has difficulty [at] duty station with numerous distractions." Barone Dep. Ex. 24, ECF No. 59-1 (Judicial Branch Medical Certificate (Sept. 9, 2014)) (submitted under seal).

But a plaintiff must "offer[] evidence that the extent of the limitation in terms of [his] own experience . . . is substantial." *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 567 (1999). This evidence also must demonstrate that the employee is "substantially limited in [one's] ability to concentrate in comparison to the general population." *DeMar v. Car-Freshner Corp.*, 49 F. Supp. 2d 84, 91 (N.D.N.Y. 1999); *see also Kohn v. AT & T Corp.*, 58 F. Supp. 393, 416 (D.N.J. 1999). There is no such evidence in this record. As a result, a reasonable jury could not find that ADHD substantially limited Ms. Barone's ability to work or to concentrate, particularly "in comparison to the general population." *DeMar*, 49 F. Supp. 2d at 91.

Accordingly, the Court finds that no genuine issue of material fact exists as to whether Ms. Barone was disabled within the meaning of the Rehabilitation Act and thus, could grant summary judgment because of a failure to establish a prima facie case.

But even if Ms. Barone could establish a prima facie case of discrimination under the Rehabilitation Act, as discussed below, this record contains legitimate non-discriminatory

reasons for Ms. Barone's termination, thus requiring her to "produce evidence and carry the burden of persuasion that the proffered reason is a pretext." *Sista*, 445 F.3d at 169.

### 2. Defendants' Legitimate Non-Discriminatory Reasons for Termination and Plaintiff's Ultimate Burden

"[W]orkplace misconduct is a legitimate and nondiscriminatory reason for terminating employment, even when such misconduct is related to a disability." *McElwee v. Cty. of Orange*, 700 F.3d 635, 639, 641 (2d Cir. 2012) (internal citation omitted) (granting summary judgment to a defendant employer because the defendant provided evidence that the plaintiff was terminated due to sexually harassing and other "disturbing" behaviors, even if those behaviors were related to the plaintiff's autism spectrum disorder); *see also Krasner v. City of New York*, 580 F. App'x 1, 3 (2d Cir. 2014) (affirming a district court's grant of summary judgment to an employer where "[t]he evidence was undisputed that [the plaintiff, who had Asperger's Syndrome,] repeatedly engaged in serious misconduct, as evidenced by his extensive disciplinary history, which included instances of insubordination, use of profane language, and threats to co-workers of serious physical harm," even though the plaintiff's behavior may have been related to his Asperger's Syndrome); *Mancini v. Accredo Health Grp., Inc.*, No. 3:17-CV-01625-MPS, 2019 WL 4192168, at *8 (D. Conn. Sept. 4, 2019) ("conclud[ing] that no reasonable jury could find that [the defendant employer's] proffered reasons—the serious misconduct complained of by [plaintiff employee's] patients, some of which [the plaintiff] herself admits—were pretext for disability discrimination.").

Defendants argue that the actions taken against Ms. Barone were not due to her disability but rather due to her misconduct. Defs.' Mem. at 12.

Ms. Barone argues that she has "specifically pled detailed pattern of harassment, pre-textual discipline and ultimately dismissal." Pl.'s Mem. at 6.

The Court disagrees.

As Defendants rightly note, anti-discrimination statutes protecting those with disabilities do not "immunize disabled employees from discipline or discharge for incidents of misconduct in the workplace." *Sista*, 445 F.3d at 169 (quoting *Krasner v. City of New York*, 2013 WL 5338558, at *12 (S.D.N.Y. Sept. 23, 2013) *aff'd*, 580 F. App'x 1 (2d Cir. 2014)). The Judicial Branch has put forth a legitimate non-discriminatory reason for workplace discipline directed at and the termination of Ms. Barone: workplace misconduct. After several written reprimands warning Ms. Barone that future misconduct would result in more serious discipline, the Judicial Branch suspended Ms. Barone on at least three separate occasions both for her alleged behavior at work and her alleged unauthorized failure to show up to work. Defs.' SOMF Ex. B, ECF No. 57-5 at 26-27 (Barone Dep. Ex. 6, Judicial Branch Disciplinary Letter (Mar. 9, 2015) ("In the past you have received a written reprimand and a one-day suspension for engaging in inappropriate conduct at work . . . [and as a result of telling] everyone in the office to 'go f*** themselves' [and] spraying a deodorant type spray [despite an email requesting that employees refrain from using such sprays] . . . you are being suspended from work without pay for a period of two (2) days."); Defs.' SOMF Ex. B, ECF No. 57-5 at 31 (Barone Dep. Ex. 9, Judicial Branch Disciplinary Letter (Aug. 3, 2015) ("As a result of [violations of Absences and Reporting Attendance policies] you are being suspended from work without pay for one (1) day."); Defs.' SOMF Ex. B, ECF No. 57-5 at 49 (Barone Dep. Ex. 16, Judicial Branch Letter (Feb. 22, 2016) (suspending Ms. Barone for multiple violations of attendance and leave policies).

The Judicial Branch subsequently terminated Ms. Barone because of her continuing unauthorized failures to show up to work in spite of multiple warnings and prior discipline, and for the falsification of time records. Defs.' SOMF Ex. B, ECF No. 57-5 at 49 (Barone Dep. Ex. 16, Judicial Branch Letter (Feb. 22, 2016) (imposing multiple suspensions as well as termination

of employment "given [Ms. Barone's] demonstrated unwillingness to comply with the basic requirement of [her] position, which is adherence to attendance expectations, and for violating Judicial Branch policies [regarding absences, reporting attendance, and taking leave], in accordance with the progressive disciplinary actions imposed for each occurrence of unauthorized leave"). There is nothing in this record that creates a genuine issue of material fact that these reasons were a pretext for discrimination against Ms. Barone, because of her alleged disabilities.

Indeed, Ms. Barone ultimately admits engaging in the conduct for which she was disciplined and ultimately fired—stating "screw you," Barone Dep. at 91:17-92:10, and "go fuck yourselves," *id.* at 90:1-8, to coworkers in the workplace; spraying an aerosol spray despite an email having circulated asking employees not to do so, *id.* at 90:12-18; telling a coworker that "you can't play the invalid card anymore," *id.* at 20:14-15; and missing work without permission or proper procedures, *id* at 103:12-16, 104:17-20, 106:19-22. In October of 2015, she also admitted that: "I owned what I was responsible for, I always will, but I now realize where this is going . . . my termination." Defs.' SOMF Ex. B, ECF No. 57-5 at 38-39 (Barone Dep. Ex. 13, Barone Letter to Judge Shaban). Finally, when asked in this case, whether she had been investigated and disciplined because of her ADHD diagnosis, Ms. Barone responded: "I have no facts." Barone Dep. at 96:10-14.

Ms. Barone argues—and at oral argument, her counsel urged the Court to consider— entries in her diary regarding her belief as to the Defendants' discriminatory conduct. *See* Pl.'s Opp. Ex., ECF No. 60 at 51, 55, 58, 60-61 (Barone Journal Entries dated Aug. 8, 2015 through Jan. 10, 2016).

The Court disagrees.

Ms. Barone's diary alone cannot create genuine issues of material fact sufficient to warrant a trial on her claims of discrimination under the Rehabilitation Act. While Ms. Barone's state of mind is probative of her view of the alleged underlying discrimination, the Rehabilitation Act, just like the ADA, "requires a plaintiff alleging a claim of employment discrimination to prove that discrimination was the but-for cause of any adverse employment action." *Natofsky*, 921 F.3d at 348.[6] A "'but-for' causation [in the Second Circuit] does not require proof that discrimination was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the discriminatory motive." *Wellner v. Montefiore Med. Ctr.*, No. 17 CIV. 3479 (KPF), 2019 WL 4081898, at *8 (S.D.N.Y. Aug. 29, 2019) (quoting *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013) (internal alterations omitted)).

In other words, there must be evidence in this record that but-for Ms. Barone's disability the Defendants would not have disciplined or terminated her. *See, e.g., Lareau v. Nw. Med. Ctr.*, No. 2:17-cv-81, 2019 WL 4963057, at *2 (D. Vt. Oct. 8, 2019) (denying summary judgment where "prior to her seizures [plaintiff] received positive performance reviews and pay raises based on merit," but "[o]nce her seizures began and she alerted her supervisors about possible periods of medical leave, she was faced with attendance-related questions and placed on a

---

[6] Ms. Barone argues that the *Natofsky* decision should not affect the outcome of this case and cites other decisions for this Court's consideration—cases, in this Court's view, inapposite to this one. *See Gagliardi v. Sacred Heart Univ., Inc.*, No. 3:17-cv-857 (VAB), 2019 WL 3202742 (D. Conn. July 16, 2019) (providing no guidance because it involves claims of gender discrimination under Title VII and Title IX, while *Natofsky* explicitly "determined that the ADA does not incorporate Title VII's mixed-motive standard." 921 F.3d at 349); *Brown v. District of Columbia*, 928 F.3d 1070, 1100 (D.C. Cir. 2019) (providing no guidance because (1) its holding applies narrowly to *Olmstead* claims under Title II of the ADA, while *Natofsky* applies to employment discrimination claims under Title I of the ADA, and (2) it is a non-binding decision from outside the Second Circuit; *Smith v. N.Y. State Office of Temp. & Disability Assistance*, No. 119-cv-112 (DNH) (CFH), 2019 WL 3472491 (N.D.N.Y. Apr. 29, 2019), *report and recommendation adopted sub nom. Smith v. NYS Office of Temp. & Disability Assistance*, No. 119-cv-112 (DNH) (CFH), 2019 WL 3454098 (N.D.N.Y. July 31, 2019) (providing no guidance because it does not discuss the causation standard required under Title I of the ADA at all).

punitive performance plan;" and that she "was terminated shortly after the plan's conclusion.");
*Murphy v. N.Y. State Pub. Emps. Fed'n*, No. 117-cv-628 (TJM) (TWD), 2019 WL 4257261, at
*12 (N.D.N.Y. Sept. 9, 2019) (denying summary judgment where the Defendant commented that
"he did not like people with disabilities" and referenced the plaintiff's "need for physical therapy
during a 'counseling session' that immediately preceded [plaintiff's] termination."); *Wellner*,
2019 WL 4081898, at *8 (denying summary judgment where defendant's "shifting position
between February and July" of 2016, during which time the plaintiff requested an
accommodation based on disability, could lead a reasonable jury to conclude that the
accommodation request precipitated her termination in July of 2016 rather than a prior event
unrelated to her disability).

Ms. Barone, however, relies only "on conclusory allegations or unsubstantiated
speculation." *Robinson*, 781 F.3d at 44 (citation omitted). There is nothing in this record from
which a reasonable jury could conclude that Ms. Barone's disability played a role in her
discipline or termination.

Accordingly, the Court will dismiss Ms. Barone's Rehabilitation Act claim against the
Judicial Branch.

**B. The First Amendment Claim against Ms. Albert and Ms. Coon**

The First Amendment protects public employees' speech from adverse employment actions
when the public employees speak (1) as a private citizen rather than as an employee, (2) on a matter
of public concern. *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). A public employee plaintiff
claiming retaliation in violation of her First Amendment rights "must allege that their employer
interfered with their right to speak as a citizen on a matter of public concern. Whether the employee
engaged in such speech is the threshold inquiry under the Court's precedents governing whether a
public employer violated the First Amendment rights of its employees. *Heffernan v. City of Paterson,*

*N.J.*, 136 S. Ct. 1412, 1420 (2016) (citing *Garcetti*, 547 U.S. at 418)). "If the employee has not engaged in what can be fairly characterized as constituting speech on a matter of public concern, it is unnecessary for [the court] to scrutinize the reasons for her discharge." *Id.* at 1417 (internal citation and quotation marks omitted).

Ms. Barone brings claims under 42 U.S.C. § 1983 against Ms. Coon and Ms. Albert in their individual capacities for violations of her First Amendment rights, specifically that Ms. Coon and Ms. Alberted retaliated against her when she petitioned for the redress of grievances. Third Am. Compl. ¶ 1-2. Ms. Barone claims that she was harassed and intimidated, given unfavorable employment evaluations, denied a reasonable accommodation request, and was ultimately fired in retaliation for filing disability discrimination complaints to the EEOC and the CHRO. *Id.* ¶ 7-20.

Because Ms. Barone's EEOC and the CHRO complaints addressed her personal grievances with the Defendants, they do not constitute speech made on matters of public concern and therefore cannot form the basis of a First Amendment retaliation claim. *See Miller v. City of Ithaca, N.Y.*, 758 F. App'x 101, 105 (2d Cir. 2018) (affirming a district court's dismissal of a police officer's First Amendment retaliation claims because his "speech was made primarily to redress his personal grievances and was not made 'as a citizen on a matter of public concern.'") (quoting *Garcetti*, 547 U.S. at 418)).

Ms. Barone did not bring a claim of retaliation under the Rehabilitation Act, which protects employees from retaliation for making complaints under those statutes. *See Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) ("The ADA makes it unlawful for an employer to 'discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this

chapter.'. . . The Rehabilitation Act . . . contain[s] similar provisions against retaliation and are governed in this respect by the same standards as the ADA." (quoting 42 U.S.C. § 12203(a)); *Weixel v. Board of Educ. of the City of New York*, 287 F.3d 138, 148–49 (2d Cir. 2002) (elements of a retaliation claim under Rehabilitation Act are the same as under the ADA)).

In any event, such claims would fail even if she had brought them.

In order to make out a prima facie case of retaliation under the Rehabilitation Act (just as with the ADA), a plaintiff must show that "(1) the employee was engaged in an activity protected by the [statute], (2) the employer was aware of that activity, (3) an employment action adverse to the plaintiff occurred, and (4) there existed a causal connection between the protected activity and the adverse employment action." *Muller v. Costello*, 187 F.3d 298, 311 (2d Cir. 1999)); *see also Sista*, 445 F.3d at 177 (applying the same test and finding that a plaintiff failed to present evidence that would allow a reasonable jury to find that the defendant "terminated him on account of his decision to exercise his rights under the ADA").

Retaliation claims under the Rehabilitation Act are subject to the same burden shifting framework as other claims under that law. *See Equal Emp't Opportunity Comm'n v. Day & Zimmerman NPS, Inc.*, 265 F. Supp. 3d 179, 199 (D. Conn. 2017) (citing *Shepheard v. N.Y.C. Corr. Dep't,* 360 F. App'x 249, 251 (2d Cir. 2010)). Therefore, a retaliation claim under the Rehabilitation Act here would fail for the same reasons that Ms. Barone's main Rehabilitation Act claim failed. As discussed *supra*, Defendants have presented substantial evidence that Ms. Barone received unfavorable employment evaluations and was ultimately fired because she engaged in misconduct in the workplace, not because she filed complaints of discrimination.

Moreover, the element of a "causal connection[ ] requires that a plaintiff show that a retaliatory motive played a part in the adverse employment action." *Sista*, 445 F.3d at 177. The

Second Circuit recently held further that a plaintiff must show that the retaliatory motive was the but-for cause of the adverse action. *Natofsky*, 921 F.3d at 353.

Ms. Albert and Ms. Coon argue that neither of them was aware of Ms. Barone's 2014 complaint or her 2016 complaints before her termination.

Ms. Barone has not pointed to any evidence which could establish a genuine issue of material fact as to Ms. Coon's or Ms. Albert's knowledge of Ms. Barone's complaints, much less that a retaliatory motive played a part in any adverse employment actions.

Although an EEOC Mediator sent a letter addressed to both Ms. Barone and a Human Resources representative of the Judicial Branch inviting both parties to mediation, that letter was addressed to Mark Ciarciello and neither addressed nor copied Ms. Coon or Ms. Albert. Defs.' SOMF Ex. B, ECF No. 57-5 at 13 (Barone Dep. Ex. 1, EEOC Invitation to Mediate (May 22, 2014)). Ms. Barone does not point to any evidence suggesting that Ms. Coon or Ms. Albert knew about this invitation to mediate. Ms. Albert testified that she was never aware of Ms. Barone's complaints while she was still employed at the Judicial Branch, and that she only became aware of Ms. Barone's CCHRO complaint in May 2016, after Mr. Barone's termination. Albert Dep. at 57:15-59:9. Ms. Coon testified that she was not aware of any of Ms. Barone's filings until she received notice of the lawsuit now before the Court. Coon Dep. at 67:6-69:5.

Additionally, Ms. Barone testified that she lacked specific knowledge that Ms. Albert or Ms. Coon ever knew of her complaints. Rather, she answered deposition questions of whether she believed Ms. Albert or Ms. Coon were retaliating against her based on her EEOC or CCHRO filings by stating "I don't know," and "don't care." *See* Barone Dep. at 27:7-10, 29:20-23, 31:18-22, 33:2-14, 157:22-158:9, 188:7-25. At one point, when asked whether she believed she had

been investigated and disciplined because of her ADHD diagnosis or her EEOC or CHRO filings, Ms. Barone responded: "I have no facts." Barone Dep. at 96:10-14.

Even if evidence showed that Ms. Coon and Ms. Albert knew about Ms. Barone's complaints, there is no record evidence that a causal connection existed between that knowledge and Ms. Barone's adverse employment actions.

A plaintiff can show a causal connection in retaliation claims either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant.'" *Littlejohn v. City of New York*, 795 F.3d 297, 319 (2d Cir. 2015) (quoting *Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)).

There is no direct evidence showing that a retaliatory motive played any part in Ms. Barone's termination. Ms. Barone appears to rely on temporal proximity between her EEOC complaint, filed in February 2014, *see* Defs.' SOMF Ex. B, ECF No. 57-5 at 2 (Barone Dep. Ex. 1, EEOC Intake Questionnaire (Feb. 25, 2014)); and the various employment actions she alleges the Defendants took in retaliation for her filing those complaints, which began in the summer and fall of 2014, ramped up over the course of 2015, and culminated in her termination in January 2016, *see* Defs.' SOMF Ex. B, ECF No. 57-5 (multiple exhibits documenting disciplinary actions taken against Ms. Barone); to support her claim that the Defendants' actions were retaliatory.

While the Second Circuit "has not drawn a bright line defining, for the purposes of a prima facie case, the outer limits beyond which a temporal relationship is too attenuated to establish causation[,]" *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010), "it is well settled that when mere temporal proximity is offered to demonstrate causation, the

protected activity and the adverse action must occur very close together," *Kouakou v. Fideliscare N.Y.*, 920 F. Supp. 2d 391, 401 (S.D.N.Y. 2012) (quoting *Clark Cnty. Sch. Dist. v. Breeden,* 532 U.S. 268, 273–74 (2001)) (internal quotation marks omitted) (dismissing a retaliation claim where four months elapsed between the complaint and the adverse action). "[D]istrict courts within the Second Circuit have consistently held that the passage of two to three months between the protected activity and the adverse employment action does not allow for an inference of causation." *Murray v. Visiting Nurse Servs. of N.Y.*, 528 F. Supp. 2d 257, 275 (S.D.N.Y. 2007) (collecting cases); *see also Brown v. City of New York*, 622 F. App'x 19, 20 (2d Cir. 2015) (The time lapses between [the plaintiff's] protected activities and the alleged retaliatory acts—ranging from two months to several years—were simply too attenuated to establish that the alleged adverse employment actions were the product of a retaliatory motive absent other supporting factual allegations).

Furthermore, even where a plaintiff can establish a prima facie case based on temporal proximity alone, a plaintiff must show more than proximity in order to overcome a defendant's proffered nondiscriminatory reasons for adverse employment actions. *See, e.g.*, *Maynard v. Stonington Cmty. Ctr.*, No. 3:15-cv-483 (RNC), 2018 WL 1633709, at *8 (D. Conn. Mar. 31, 2018) (finding that although a plaintiff established a prima facie case of retaliation because she was terminated just eleven days after making a complaint of harassment, "the temporal proximity between her protected activity and discharge, standing alone, [wa]s insufficient to establish that defendant's reasons are pretextual").

Based on the record, the earliest adverse action Ms. Barone could allege she experienced as retaliation occurred on July 31, 2014, Defs.' SOMF Ex. B, ECF No. 57-5 at 24 (Barone Dep. Ex. 5, Judicial Branch Written Reprimand (July 31, 2014)); five months after she filed her first

EEOC complaint, Defs.' SOMF Ex. B, ECF No. 57-5 at 2 (Barone Dep. Ex. 1, EEOC Intake Questionnaire (Feb. 25, 2014)). She was discharged almost exactly two years later. Defs.' SOMF Ex. B, ECF No. 57-5 at 49 (Barone Dep. Ex. 16, Judicial Branch Letter (Feb. 22, 2016)). On this record, the temporal relationship between Ms. Barone's EEOC complaint and the adverse actions she experienced is simply too attenuated to demonstrate that retaliatory motive played any part in those adverse actions at all, and certainly too attenuated to show that retaliatory motive was a but-for cause.

Ms. Barone cannot rely on her repeated conclusory assertions that Ms. Albert and Ms. Coon retaliated against her based on her EEOC complaint without any record evidence to support her assertions. *Alteri,* 919 F. Supp. at 94-95 (non-moving party may not simply rest on the pleadings, or on conclusory or speculative accusations or arguments, but "must present concrete evidence from which a reasonable juror could return a verdict in his favor" (internal quotations omitted)).

No reasonable jury therefore could find that Ms. Barone was retaliated against for filing complaints with the EEOC or CHRO, under the First Amendment, or the Rehabilitation Act.

Accordingly, Ms. Barone's retaliation claim will be dismissed.

IV.    **CONCLUSION**

For the foregoing reasons, the Defendants' motion for summary judgment is

**GRANTED.**

The Clerk of Court is respectfully requested to close this case.

SO ORDERED at Bridgeport, Connecticut, this 27th day of December, 2019.

<u>/s/ Victor A. Bolden</u>
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE